UNITED STATES of America,
Plaintiff–Appellee,

v.

Marlene TARRANT, Defendant–
Appellant.

No. 89–80240–02.

United States District Court,
E.D. Michigan, S.D.

July 17, 1992.

Kathy Moro–Nesi, Asst. U.S. Atty., Detroit, Mich., for plaintiff-appellee.

Richard Lustig, Detroit, Mich., for defendant-appellant.

## OPINION AND ORDER REGARDING DEFENDANT'S APPEAL OF HER CONVICTION AND SENTENCE IMPOSED BY THE MAGISTRATE JUDGE

ROSEN, District Judge.

## I. INTRODUCTION

Marlene Tarrant was tried and convicted on five counts of failure to file income tax returns in a December 1989 jury trial conducted (by consent) before Magistrate Judge Virginia Morgan.[1] Following the trial, Magistrate Judge Morgan sentenced

Ms. Tarrant to one year incarceration, a $5,000 fine, and 5 years probation. Ms. Tarrant filed a timely "Notice of Appeal" and now appeals to this Court pursuant to 18 U.S.C. § 3402. She is currently on bond pending resolution of this appeal.[2]

Both Defendant and the Government have fully briefed the issues on appeal and the Court heard oral argument on this matter on June 25, 1992. Having reviewed and considered the parties respective arguments, the Court is now prepared to rule on Ms. Tarrant's appeal and this Opinion and Order sets forth that ruling.

## II. FACTUAL BACKGROUND

Marlene Tarrant and her husband, Michael Tarrant were indicted by a federal grand jury in 1989 on five counts each of failure to file federal income tax returns for the years 1982 through 1986. Prior to trial, Judge Suhrheinrich granted Ms. Tarrant's Motion to Sever her case from that of her husband on the grounds that the two defendants had antagonistic defenses.

Both Ms. Tarrant and her husband subsequently consented to (separate) jury trials before Magistrate Judge Morgan.[3] Ms. Tarrant was tried first.

The Government's theory was that Ms. Tarrant and her husband were tax protestors and that they each intentionally and willfully failed to file tax returns from 1979 to 1986. Ms. Tarrant's defense was that she had not acted willfully, that she did not

---

**1.** Willful failure to file an income tax return is a *misdemeanor,* punishable by a fine of not more than $25,000, or 1 year imprisonment, or both. 26 U.S.C. § 7203. The Magistrate's Act, 28 U.S.C. § 636(a)(3), and 18 U.S.C. § 3401 expressly authorize magistrate judges to try and sentence persons accused of misdemeanors. *See also, Peretz v. United States,* — U.S. —, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991).

**2.** The Court notes that in her "Notice of Appeal", Ms. Tarrant states only that she is appealing "her *sentence* imposed by the Honorable Virginia Morgan, United States Magistrate". However, it is clear from the arguments raised in her Appeal Brief and at oral argument that Ms. Tarrant is actually appealing her *conviction* (i.e., errors in the conduct of the trial), not her actual "sentence".

Although normally when an appellant only indicates in a Notice of Appeal that he/she is

appealing a "sentence", a reviewing court's consideration of that appeal may properly be limited to the "sentence" alone [i.e., alleged trial errors will not be reviewed], because the Government has not raised the "sentence-only Notice of Appeal" issue, but rather has fully briefed in its opposition Brief all of the alleged trial error issues addressed in Ms. Tarrant's Appeal Brief, and, thus, appears to have at least implicitly accepted Ms. Tarrant's appeal of her sentence as being an appeal of her "conviction", the Court will not limit its review to Ms. Tarrant's "sentence", but rather will review all of the alleged trial errors pointed to by Appellant.

**3.** Both Marlene and Michael had at one point entered guilty pleas (pursuant to a Rule 11 Plea Agreement) but subsequently were allowed to withdraw those guilty pleas.

file returns because she did not think she had to file based on correspondence she received from the IRS after not filing returns for several years which stated, in essence, that if she did not file tax returns the IRS would file them for her. She further defended on the basis that her failure to file was predicated upon her husband's beliefs of the nature of the law [4] and that, because she supported her husband in his beliefs, she did not file returns in order to maintain the stability of her marriage.

At trial, the Government presented evidence that in the years 1976 through 1978, prior to the years charged in the indictment, Ms. Tarrant had filed joint income tax returns with her husband and had paid federal income taxes, and that she had filed individual tax returns each year from 1964 to 1974. Evidence was presented at trial showing that from 1979 through 1986 (a period which included the years charged in the indictment), Ms. Tarrant earned income for which she owed taxes but that she did not pay the tax due, nor did she file any tax returns.

Evidence at trial further demonstrated that, starting in 1979 through 1985, Ms. Tarrant steadily increased the number of exemptions on her W-4 form to reduce or eliminate the tax withheld by her employer from zero exemptions, to four, to eight, to "exempt", and then back down to five. With respect to changing her W-4 forms and declaring "exempt" status, she testified that she believed in what her husband was telling her and followed what he said. She admitted that she filed an exempt status even though she knew that she would incur tax liability but she did not intend to send a check for taxes due. She explained during her trial testimony that she subsequently reduced the number of exemptions to five because she was beginning to get worried about supporting her husband's beliefs regarding taxes. She testified that she knew taxes and penalties would be assessed and were accruing and that she

changed her W-4 from "exempt" to five exemptions so that some of the penalties she knew she would ultimately owe would be reduced.

In addition to changing the number of exemptions on her W-4 forms, evidence was presented at trial that the Ms. Tarrant transferred ownership of her car, and her husband transferred ownership of his pickup truck, into the name of the "Church of New Hope", a "church" purportedly run by the Tarrants,[5] and that they transferred their home into a "Valley Forge Trust."

Ms. Tarrant further admitted during her testimony that she attended meetings of the tax protestor organization, "We, The People, Act" for two years on a regular basis. She further testified that she knew that one of the leaders of the group was involved in legal proceedings concerning his stand on taxes and that she, herself, twice requested the IRS to send her all documents pertaining to her which the IRS had in its Criminal Investigation Division files.

Ms. Tarrant also testified that when she received correspondence from the IRS in 1982 regarding her failure to file income tax returns since 1979, she realized that she could file separately but that she decided not to because she wanted to support her husband. She admitted that she received correspondence from the IRS which informed her that if she and her husband earned $5,400 or more, she was required to file an income tax return.

With respect to her defense that she did not file returns because she thought the IRS was filing returns for her, Ms. Tarrant testified:

> [W]e had been communicated with and in contact with the Internal Revenue Service and through their letters it was obvious to me that they had information on us in the form of a return so *I felt that*

---

4. Michael Tarrant, a college educated Ford Motor Company computer specialist, was a proponent of the belief that federal income tax laws were either unconstitutional or did not apply to him. [See May 14, 1990 Opinion of Magistrate Judge Morgan Denying Defendant Michael Tarrant's Motion for New Trial.]

5. The "church" had the same address as the Tarrants' residence.

*returns were filed on our behalf, not by us.*

[12/13/89 Tr. pp. 15–16.]

Evidence was presented at trial that the Tarrants had been in communication with the IRS for a number of years [See 12/13/89 Tr.]. In mid–1984, after having received numerous letters from the IRS regarding her non-filing of income tax returns, Ms. Tarrant received correspondence from the Internal Revenue Service requesting that the Tarrants come to the IRS office for an interview the following month and bring with them pertinent income and expense records. The June 1984 letter stated in pertinent part,

> This will enable us to prepare a federal income tax return for the years 1979, 1980, 1981, 1982 and 1983 for which no returns have been made. A blank return is attached to guide you in producing the necessary documents and records.

[12/13/89 Tr. pp. 40–41.]

Ms. Tarrant testified that, based upon the foregoing excerpt from the letter indicating that "this will enable us to prepare a federal income tax return", she did not believe she had to file returns because she thought the letter meant that "they [the IRS] were preparing income tax returns for us." [12/13/89 Tr. p. 41.]

After a three-day trial, the jury found Ms. Tarrant guilty of all five counts of failure to file income tax returns in violation of 26 U.S.C. § 7203, and she was subsequently sentenced by Magistrate Judge Morgan as indicated above.[6] This appeal followed.

## III. ISSUES ON APPEAL

This appeal is predicated upon Ms. Tarrants' allegations of six points of error in her trial proceedings.

1) First, Ms. Tarrant contends that the Magistrate Judge erred in instructing the jury regarding what is not to be considered as evidence. The Magistrate Judge stated in her standard jury charge on this issue:

> Assertions of fact contained in questions to witnesses are not to be considered as evidence of that fact unless affirmed or testified to by the witness. The examiner's statements are not themselves evidence.
>
> Statements and arguments of counsel *and of the defendant* are not evidence in the case, unless made as an admission or stipulation of fact.

[12/14/89 Tr. p. 61.]

Defendant admits that she did not object to the charge at trial. However, she now claims that "plain error" was committed by the Magistrate Judge in her inadvertent inclusion of statements and arguments "of the defendant" in the above non-evidence charge.

The Government counters that that one isolated part of the charge does not constitute such prejudicial error to satisfy the plain error doctrine; that the jury instructions taken as a whole clearly and properly explained to the jury how the defendant's testimony should be treated, and, as a result, any error in including "of the defendant" in the one non-evidence charge was harmless.

2) Second, Defendant contends that the Magistrate Judge did not adequately instruct the jury with respect to her "lack of willfulness" theory of defense because the Magistrate Judge refused to instruct the jury regarding her good faith reliance upon her husband with an "innocent spouse" instruction. [See 12/14/89 Tr. p. 84.] The Government counters that no error was committed in the Magistrate's refusal to give an innocent spouse instruction because that instruction is not applicable in a failure-to-file case and because the jury charge on willfulness and good faith reliance, taken as whole, fairly and adequately set forth Defendant's theories of defense and applicable law for the jury.

3) Defendant's third point of error is the Magistrate Judge's refusal to allow her to

---

**6.** Marlene Tarrant's husband, Michael Tarrant, was also found guilty on all five counts by the jury in his subsequent trial. He was sentenced to one year custody, a $10,000 fine and five years probation. Michael also originally filed a Notice of Appeal but subsequently withdrew his appeal.

cross-examine the Government's summary witness, IRS agent Robert Gardner as to his legal interpretation of a statutory provision. Specifically, Defendant sought to question agent Gardner on cross-examination regarding his interpretation of the legal significance of the section of the Internal Revenue Code which provides for a "substitute return". Magistrate Morgan ruled that presenting the witness's interpretation of a legal statute to the jury would improperly invade the province of the court and could result in juror confusion. Therefore, she held that Defendant could not pursue that "legal interpretation" line of questioning. And, when defense counsel persisted in that vein, MJ Morgan cautioned the jury,

> Jurors, certain provisions of the Internal Revenue Code have been brought up here and I don't want you to be confused over the fact that the agent may be testifying to certain provisions of the code. I will give you all the law that you need to decide this, and any portions of the Internal Revenue Code that you need to consider in your decision will come from me. You are instructed that the provisions of the Internal Revenue Code require that each person obligated to pay income tax must file and prepare a tax return. Though the law does permit the Secretary of the Treasury to prepare a return for an individual who has not filed, the law does not require the Secretary to do so and the Secretary's discretion in this matter in no way reduces the obligation of the individual to file their return.

[12/13/89 Tr., Gardner volume, pp. 8–9.]

4) Ms. Tarrant's fourth point of error is, like her first point, an evidence matter which she never objected to at trial—she contends that the Magistrate Judge abused her discretion in allowing the Government to present evidence of her husband's income. Ms. Tarrant argues that once her husband's case was severed from her case, the prosecution should have been prohibit-ed from bringing in any evidence as to his actions or income claiming that because of the severance, such evidence was not relevant and was more prejudicial than probative. The Government disputes Defendant's contentions of lack of relevance and probity.

5) As her fifth point of error, Defendant contends that the Magistrate Judge abused her discretion in allowing into evidence certified copies of official IRS records of tax assessments and payments pertaining to the Tarrants under the records exceptions to the hearsay rule, Fed.R.Evid. 803(8) and (10) and the self-authentication rule, Rule 902(1). The certified documents were admitted into evidence during IRS agent Gardner's testimony to show the absence of any tax returns filed by Defendant.[7]

The Government counters that MJ Morgan did not err in admitting the records and further argues that to the extent that Defendant is challenging the admission of the documents on a "lack of trustworthiness" basis, such a challenge goes to the weight of the evidence rather than its admissibility. With regard to a "lack of trustworthiness" challenge, the Government asserts that Defendant had ample opportunity to challenge the trustworthiness of these documents in the course of his cross-examination of agent Gardner.

6) Ms. Tarrant's last point of error is that Magistrate Judge Morgan erred in instructing the jury as to the law with regard to the interpretation of 26 U.S.C. § 6020(b), the "substitute return" provision mentioned above, claiming that the instruction inhibited her defense that she had relied on the actions/representations of the Internal Revenue Service and believed that the IRS filed returns on her behalf.

The Magistrate instructed the jury as follows:

> Evidence has been introduced that what has been called a substitute return was filed for the defendant by the IRS

---

7. Although Defendant originally objected to the admission of this evidence at trial, when it was pointed out that the record reflected the date when a substitute for a return was filed, Defen-dant's counsel withdrew his objection, reserving his right to cross-examine IRS agent Gardner as to credibility. [Gardner volume, Tr. p. 9.]

for some of the years charged in the indictment.

The jury is instructed that the provisions of the Internal Revenue Code require that each person obligated to pay income tax must prepare and file a return. Although the law does permit the Secretary of the Treasury to prepare a return for an individual who has not filed, the law does not require the Secretary to do so and the Secretary's discretion in this matter in no way reduces the obligation of the individual taxpayer to file returns. However, you may consider that evidence to determine whether or not Marlene Tarrant actually had a good faith belief that she fulfilled her requirement to file.

[12/14/89 p.m. Tr. pp. 73–74.]

The Government contends that inasmuch as the Magistrate Judge specifically instructed the jury that it could consider the evidence regarding the IRS's preparation of a return for persons who do not file one in determining whether Defendant had a good faith belief that she did not have to file a return, Defendant has failed to demonstrate that she was prejudiced by the instruction. The Government further argues that the Magistrate Judge's "the law does not require the Secretary to prepare a return for a non-filer" is consistent with the construction of Section 6020 given by every court that has considered this issue.

## IV. DISCUSSION

### A. THE "PLAIN ERROR DOCTRINE".

As an initial matter, as indicated above, Defendant did not object at all during trial to two of the six alleged errors that she now points to in this appeal, to wit, the jury instruction regarding what is not evidence (point one) and the admission of evidence of Michael Tarrant's income and actions (point four). And, with respect to a third alleged error—the admission into evidence of the certified records of tax assessments and payments pertaining to the Tarrants (point five)—although Defendant originally objected to admission of that evidence, she subsequently withdrew that objection.

■ It is well-established in this Circuit that when a defendant fails to make an objection to an instruction or to the admission of evidence at trial, he/she is precluded from arguing on appeal that the instruction or the admission of the evidence was flawed unless the instruction or the admission of the evidence constituted "plain error". *United States v. Sanderson*, 966 F.2d 184, 187 (6th Cir.1992); *United States v. Cox*, 957 F.2d 264, 267 (6th Cir.1992); *United States v. Blankenship*, 954 F.2d 1224, 1230 (6th Cir.1992); *United States v. Hook*, 781 F.2d 1166, 1172 (6th Cir.1986), *cert. denied*, 479 U.S. 882, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986). *See also*, Fed.R.Civ. Pro. 52(b); *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982).

As the Sixth Circuit recently explained in *Cox, supra:*

> The Supreme Court and numerous federal courts have repeatedly stated that the plain error doctrine is to be used sparingly, only in exceptional circumstances, and solely to avoid a miscarriage of justice. Recourse may be had to the doctrine "only on an appeal from a trial infected with error so 'plain' the trial judge and the prosecutor were derelict in countenancing it.

957 F.2d at 267, *citing, United States v. Hook, supra. See also, Blankenship, supra* ("Plain error is 'an egregious error, one that directly leads to a miscarriage of justice.'" 954 F.2d at 1230, *citing, United States v. Busacca*, 863 F.2d 433, 435 (6th Cir.1988), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1640, 104 L.Ed.2d 156 (1989)).

The Court will apply the foregoing standard in reviewing Ms. Tarrant's first, fourth and fifth points of error.

1. *No Plain Error Occurred When the Magistrate Judge Inadvertently Included "Statements of the Defendant" in the One Non–Evidence Instruction Where the Jury Instructions as a Whole Fairly and Adequately Explained to the Jury That Ms. Tarrant's Testimony Should be Given the Same Consideration as That of Other Witnesses.*

■ In reviewing a jury instruction to which the appellant failed to object at trial,

the plain error review consists of consideration of "whether the jury instructions, when taken as a whole, were so clearly wrong as to produce a grave miscarriage of justice." *United States v. Sanderson, supra*, 966 F.2d at 187, *citing, United States v. Piccolo*, 723 F.2d 1234, 1241 (6th Cir. 1983).[8]

With respect to Defendant's first point of error, Ms. Tarrant points to only one phrase contained in the Magistrate Judge's non-evidence instruction that questions and arguments of counsel are not evidence. One sentence inadvertently included the defendant in the standard charge:

> Assertions of fact contained in questions to witnesses are not to be considered as evidence of that fact unless affirmed or testified to by the witness. The examiner's statements are not themselves evidence.
>
> Statements and arguments of counsel and of the defendant are not evidence of the case, unless made as an admission or stipulation of fact. . . .

[12/14/89 Tr. p. 61.]

However, reviewing the jury instructions *as a whole*, as the Sixth Circuit has directed, the Court finds that the instructions clearly and properly explained to the jury how the defendant's testimony should be treated. The Magistrate Judge also gave the following instructions:

> The defendant in a criminal case has a perfect right to either testify as a witness in the case or to decline to do so. In weighing his or her testimony, where such defendant has testified, *you should apply the same principles by which the testimony of the other witnesses is tested*, including the witnesses called by the government.
>
> \* \* \* \* \* \*
>
> Any accused person, having taken the witness stand *is before you just like any other witness. He or she is entitled to the same consideration and must have the testimony measured in the same way as any other witness*, including his or her interest in the outcome of the case.

[12/14/89 p.m. Tr. pp. 63–64.]

When viewed in the context of the entire charge, the alleged error pointed to by Defendant was harmless beyond a reasonable doubt. In this regard, as the Supreme Court noted in *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973):

> [T]he question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.

*Id.* at 147, 94 S.Ct. at 400.

In this case, the brief phrase to which Defendant now objects was buried in one instruction that non-testimonial statements and questions were not evidence. This instruction was followed by complete instructions as to the correct standard by which Defendant's testimony should be judged.

For the foregoing reasons, the Court does not find that the one brief, isolated phrase in the one brief instruction "so infected the entire trial" with plain error to warrant reversal.

### 2. No Plain Error Occurred When the Trial Court Admitted Evidence of Defendant's Husband's Income.

As with Defendant's first point of error, with respect to her fourth point of error—that the trial court erred in admitting evidence of her husband's income and the amount of taxes due thereon—Defendant did not object to the admission of this evidence at trial, and, therefore, like the non-evidence instruction issue, this matter will be reviewed only for "plain error".

---

**8.** When the jury instruction issue is properly preserved for review by objection at trial, the appellate standard of review is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury. *United States v. Martin*, 740 F.2d 1352, 1361 (6th Cir.1984). Moreover, the Sixth Circuit has consistently held that jury instructions should be reviewed for a contextual understanding of the entire charge such that no single provision is read in isolation. *See, e.g., United States v. Horton*, 847 F.2d 313, 322 (6th Cir. 1988); *Engle v. Koehler*, 707 F.2d 241 (6th Cir. 1983), *aff'd*, 466 U.S. 1, 104 S.Ct. 1673, 80 L.Ed.2d 1 (1984); *United States v. Smith*, 584 F.2d 759 (6th Cir.1978), *cert. denied*, 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 395 (1979).

Defendant contends that error was committed in admitting the evidence of her husband's income because she claims it was not relevant. The Court disagrees. Evidence of Michael Tarrant's income was relevant as to Defendant's knowledge of her obligation to file income tax returns. Defendant claimed that she did not file income tax returns because of reliance on the advice of her husband and on statements in IRS correspondence. It was the Government's theory that Ms. Tarrant *knew* she was obligated to file tax returns and that she did not file returns to avoid the payment of taxes. Since Defendant had a past history of filing joint returns with her husband, consideration of her husband's income was relevant to a determination of whether Defendant would have had a tax obligation if she had filed jointly.

To the extent that Defendant is attempting to make out a Rule 403 "more prejudicial than probative" argument, as the Sixth Circuit directed in *United States v. Zipkin*, 729 F.2d 384 (6th Cir.1984), in reviewing a trial court's evidentiary decision under Rule 403, the reviewing court is to "look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *Id.* at 389. The *Zipkin* court went on to explain, "[T]he draftsmen [of the Federal Rules of Evidence] intended that the trial judge be given a very substantial discretion in 'balancing' probative value on the one hand and 'unfair prejudice' on the other, and that he should not be reversed simply because an appellate court believes it would have decided the matter otherwise...." *Id.* at 390.

By application of the foregoing standards, and under the plain error rules, the Court finds no reversible error in the admission of evidence of Michael Tarrant's income and amount of taxes due thereon.

3. *The Magistrate Judge Did Not Err in Admitting Into Evidence Certified Copies of IRS Records of Tax Assessments and Payments Concerning the Tarrants.*

■ The above legal discussions also apply to Defendant's claim that the Magistrate Judge in admitting under the public records exceptions to the hearsay rule— Fed.R.Evid. 803(8) and 803(10)—the certified IRS records of tax assessments and payments pertaining to the Tarrants. These certified records were "self-authenticated" under Fed.R.Evid. 902, and were admitted into evidence to prove the absence of a public record, i.e., the absence of an tax returns filed by Ms. Tarrant for the years charged in the indictment. Several courts have squarely addressed this issue and have held that IRS Certificates of Assessment and Payments—the very records at issue here—are admissible under Rule 803(10) for this "absence of filing of tax return" purpose. *See e.g., United States v. Neff*, 615 F.2d 1235, 1241–1242 (9th Cir. 1980), *cert. denied*, 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980). *See also, United States v. Farris*, 517 F.2d 226 (7th Cir.1975), *cert. denied*, 423 U.S. 892, 96 S.Ct. 189, 46 L.Ed.2d 123 (1975). The courts have further held that admission of these self-authenticated IRS records does not violate the failure-to-file-tax-returns defendant's right to confrontation. *Neff, supra*, 615 F.2d at 1242 and cases cited therein.

For all of the foregoing reasons, the Court finds no plain error or abuse of discretion in the Magistrate Judge's admission into evidence of the IRS Certificates of Assessments and Payments.

**B. THE MAGISTRATE JUDGE DID NOT ERR IN REFUSING TO GIVE AN "INNOCENT SPOUSE" INSTRUCTION, WHERE SHE ADEQUATELY INSTRUCTED THE JURY ON ALL OF THE ASPECTS OF DEFENDANT'S THEORY OF THE CASE WHICH WERE SUPPORTED BY THE EVIDENCE AND THE LAW.**

■ Defendant contends that Magistrate Judge Morgan did not adequately instruct the jury with respect to her "lack of willfulness" theory of defense because the Magistrate Judge refused to instruct the jury

regarding her good faith reliance upon her husband with an "innocent spouse" instruction.

When a jury instruction issue is properly preserved for review by objection at trial, the appellate standard of review is whether the instructions, taken as a whole, fairly and adequately submit the issues and applicable law to the jury. *United States v. Martin,* 740 F.2d 1352, 1361 (6th Cir.1984). Moreover, as indicated above, the Sixth Circuit has consistently held that jury instructions should be reviewed for a contextual understanding of the entire charge such that no single provision is read in isolation. *See, e.g., United States v. Horton, supra; Engle v. Koehler, supra; United States v. Smith, supra.*

With respect to "omitted" instructions, the Sixth Circuit recently stated that given the "considered as a whole" review standard, "An omitted or incomplete instruction is even less likely to justify reversal, since such an instruction is not as prejudicial as a misstatement of the law." *United States v. Sanderson, supra,* 966 F.2d at 187.

In this case, the Magistrate Judge refused to instruct the jury on the "innocent spouse" defense. The "innocent spouse" defense is based on 26 U.S.C. § 6013(e)(1). That provision is applicable only in the civil context and not the criminal context, and it applies only in "failure to *pay* taxes" cases, not "failure to file tax return" cases, because its purpose is to prevent an innocent spouse from incurring liability for tax deficiencies caused by a spouse's understatement of income. *See, Shea v. Commissioner of Internal Revenue,* 780 F.2d 561, 564 (6th Cir.1986).

Moreover, Section 6013(e)(1) itself provides that the defense does not apply unless the taxpayer meets certain requirements. Specifically, the statute states:

[I]f—

(A) *a joint return has been made under this section for a taxable year,* [and]

(B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, [and]

(C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and

(D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,

then the other spouse shall be relieved of liability for tax (including interest, penalties and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.

26 U.S.C. § 6013(e)(1).

As provided above, the initial prerequisite for application of the innocent spouse defense is that a joint return have been filed for the years in question. In this case, Defendant does not dispute that she did not file any returns for the years in question. Therefore, the defense is not applicable and, accordingly, the Magistrate Judge did not err in refusing to instruct the jury on this issue.

■ Furthermore, to the extent that Defendant now argues that Magistrate Judge Morgan did not adequately instruct the jury on her "lack of willfulness" and "good faith reliance upon her husband" defense theories, having reviewed the jury instructions as a whole, this Court finds no merit in Defendant's argument.

The Magistrate Judge instructed the jury extensively on the issue of willfulness and its relationship to Defendant's good faith reliance defense. The jury instructions given included the following:

The defendant's conduct is not willful if she acted through negligence, inadvertence, or mistake, or due to his or her good faith misunderstanding of the requirements of the law.... In other words, a good faith misunderstanding may negate willfulness but a good faith disagreement will not.

Willfulness necessarily depends upon the defendant's state of mind at the time that acts or omissions for which she is

charged were committed. This is a question for you as jurors to determine.

\* \* \* \* \* \*

Although the law does permit the Secretary of the Treasury to prepare a return for an individual who has not filed, the law does not require the Secretary to do so and the Secretary's discretion in this matter in no way reduces the obligation of the individual taxpayer to file returns. However, you may consider that evidence to determine whether or not Marlene Tarrant actually had a good faith belief that she fulfilled her requirement to file.

\* \* \* \* \* \*

The defendant has introduced evidence of advice she heard from … her husband that she relied on in concluding that she was not a person required to file income tax returns for the years 1982 through 1986.

The evidence has been admitted solely for the purpose of aiding you in determining whether or not the defendant's failure to file tax returns for 1982 through 1986 were [sic] knowing and willful and you should not consider it for any other purpose.

\* \* \* \* \* \*

The defendant has asserted that she held a good faith belief that she was not required to file income tax returns or pay federal income tax. . . .

[I]f a person in good faith believes that he or she has done all that the law requires, he or she lacks the required criminal intent. Thus, if you should find that the defendant believed in good faith that she was not required to file income tax returns, you should find her not guilty of the charges. . . .

[12/14/89 p.m. Tr. pp. 71–77.]

These instructions demonstrate that the Magistrate Judge clearly placed Defendant's theory of the case before the jury.

In sum, the Court finds that no error was committed in the Magistrate's refusal to give Defendant's requested "innocent spouse" instruction because that instruction is not applicable in a failure-to-file case

and because, the instruction on willfulness and good faith reliance, taken as whole, fairly and adequately set forth Defendant's theories of defense and applicable law for the jury.

## C. THE MAGISTRATE JUDGE DID NOT ABUSE HER DISCRETION IN PRECLUDING DEFENDANT FROM CROSS–EXAMINING IRS AGENT GARDNER REGARDING HIS INTERPRETATION OF THE LEGAL SIGNIFICANCE OF A STATUTORY PROVISION.

Defendant argues that the Magistrate Judge erred in refusing to allow her to cross-examine the Government's summary witness, IRS Agent Gardner, as to his interpretation of the legal significance of 26 U.S.C. § 6020(b).

That provision states as follows:

(1) Authority of Secretary to execute return.

If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.

On direct examination, agent Gardner explained the certificate of IRS record for Defendant Marlene Tarrant. In response to questioning about an entry on the certificate labelled "substitute for return", agent Gardner explained that a substitute for return "is basically a blank return that is submitted by examination to enter the taxpayer on the [computer] system." [12/12/89 Tr., Gardner Vol., p. 24.]

On cross-examination, Magistrate Judge Morgan sustained the Government's objection when Defendant attempted to question agent Gardner as to his interpretation of the legal significance of Section 6020(b). In so doing, the Magistrate Judge relied upon *United States v. Poschwatta*, 829 F.2d 1477, 1483 (9th Cir.1987), *cert. denied*, 484 U.S. 1064, 108 S.Ct. 1024, 98 L.Ed.2d

989 (1988), a failure-to-file tax return case in which the appellate court specifically upheld the trial court's determination to exclude cross-examination of IRS employees as to a legal interpretation of Section 6020(b).[9] Magistrate Morgan expressed her concern that if Defendant were allowed to pursue cross-examination as to the legal significance of that provision, the jury would be confused and misled into believing the witness was their source for the law governing the case. [See 12/13/89 Tr., Gardner Vol. pp. 6–8.]

█ The Magistrate Judge's decision is well-supported by Sixth Circuit law. *See, e.g., United States v. Curtis,* 782 F.2d 593, 599 (6th Cir.1986); *United States v. Zipkin, supra, Torres v. County of Oakland,* 758 F.2d 147, 150 (6th Cir.1985). Moreover, a trial judge's decision on an evidentiary matter is reviewed deferentially, and is reversible only if the reviewing court is firmly convinced that a mistake has been made. *United States v. Arnold,* 890 F.2d 825, 828 (6th Cir.1989).

By application of the foregoing authorities, this Court finds no error in the Magistrate Judge's exclusion of cross-examination of agent Gardner on the legal significance of Section 6020(b).

## D. THE MAGISTRATE JUDGE DID NOT ERR IN INSTRUCTING THE JURY ON SECTION 6020(b) AND DEFENDANT'S THEORY OF RELIANCE UPON THAT SECTION.

█ Ms. Tarrant's last point of alleged error is that Magistrate Judge Morgan erred in instructing the jury as to the law with regard to the interpretation of 26 U.S.C. § 6020(b), the "substitute return" provision mentioned above, claiming that the instruction inhibited her defense that she had relied on this provision and by its language believed that the IRS filed returns on her behalf.

The Magistrate instructed the jury as follows:

Evidence has been introduced that what has been called a substitute return was filed for the defendant by the IRS for some of the years charged in the indictment.

The jury is instructed that the provisions of the Internal Revenue Code require that each person obligated to pay income tax must prepare and file a return. Although the law does permit the Secretary of the Treasury to prepare a return for an individual who has not filed, the law does not require the Secretary to do so and the Secretary's discretion in this matter in no way reduces the obligation of the individual taxpayer to file returns. However, you may consider that evidence to determine whether or not Marlene Tarrant actually had a good faith belief that she fulfilled her requirement to file.

[12/14/89 p.m. Tr. pp. 73–74.]

Having reviewed the foregoing instruction, the Court agrees with the Government that inasmuch as the Magistrate Judge specifically instructed the jury that it could consider the evidence regarding the IRS's preparation of a return for persons who do not file one in determining whether Defendant had a good faith belief that she did not have to file a return, the Court is hard-pressed to see how Defendant can claim that she was prejudiced by the instruction.

It appears, however, that Defendant is arguing that, notwithstanding the Magistrate Judge's explicit instruction that the jury could consider Section 6020 for the purpose of determining whether Ms. Tarrant actually had a good faith belief that she did not have to file tax returns, the remainder of the instruction regarding the Secretary's "discretion" inhibited her defense. Defendant contends that because the language of Section 6020(b) states that if an individual fails to file a return, the Secretary "shall" make one for him, the part of the Magistrate Judge's instruction that the Secretary "is permitted but not required to make a return" for a non-filer

---

**9.** In *Poschwatta,* as in this case. the defendant, however, was allowed to testify as to an alleged good faith belief that he was relieved from the obligation of filing returns because Section 6020(b) states that the IRS will make out returns for individuals who fail to do so.

was erroneous. The record reflects that, in deciding to give the instruction she gave, the Magistrate Judge relied upon the Seventh Circuit's decision in *United States v. Verkuilen*, 690 F.2d 648 (7th Cir.1982), [see 12/14/89 Tr. p. 85].

In *Verkuilen*, the trial court gave the very same instruction as in this case (but without the "good faith reliance" last sentence of the instruction given here). Verkuilen made the same argument that Defendant makes here, i.e., that the instruction was erroneous because he claimed that it misstated the law by replacing the mandatory "shall" in the statutory language with "permitted but not required". The Seventh Circuit, relying upon the tax court's construction of Section 6020(b)(1) in *Hartman v. Commissioner of Internal Revenue*, 65 T.C. 542 (1975), determined that Section 6020(b)(1) "does not make it mandatory that the Secretary of the Treasury file a tax return". 690 F.2d at 648.

Moreover, the *Hartman* court relied upon *United States v. Harrison*, 30 A.F.T.R.2d 72–5104 (E.D.N.Y.1972), *aff'd*, 486 F.2d 1397 (2d Cir.1972), *cert. denied*, 411 U.S. 965, 93 S.Ct. 2144, 36 L.Ed.2d 685 (1973). *Harrison* was also a failure-to-file case. There, the trial court, after conducting an extensive review of the legislative history of Section 6020, concluded that the statute's purpose was to provide a mechanism for the IRS to assess the civil tax liability of a taxpayer who has failed to file a return, *not* to excuse the taxpayer from the criminal liability that results therefrom.

Based on the foregoing authorities, the Court finds that the Magistrate Judge's instruction on Section 6020 and Defendant's alleged good faith reliance thereon was not erroneous.

## V. CONCLUSION

In sum, for all of the foregoing reasons and for the further reasons stated by the Court on the record on June 25, 1992,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendant Marlene Tarrant's conviction and the sentence imposed upon her by the Magistrate Judge be, and hereby is, AFFIRMED.