**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Abel MARTINEZ–SALAZAR,
Defendant–Appellant.**

No. 94–10158.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 16, 1994.

Submission Vacated April 24, 1995.

Re-argued and Submitted Nov. 21, 1996.

Submission Vacated May 1, 1997.

Resubmitted July 17, 1997.

Decided May 28, 1998.

Michael D. Gordon, Assistant Federal Public Defender, Phoenix, Arizona, for Defendant–Appellant.

Vincent Q. Kirby, Assistant U.S. Attorney, Phoenix, Arizona, for Plaintiff–Appellee.

Before: REINHARDT, RYMER and HAWKINS,\* Circuit Judges.

Opinion by Judge MICHAEL DALY HAWKINS; Partial Concurrence and Partial Dissent by Judge RYMER.

MICHAEL DALY HAWKINS, Circuit Judge.

## FACTS

Abel Martinez–Salazar ("Martinez–Salazar") was tried and convicted, along with a codefendant, of: (1) conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. § 846; (2) possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(i); and (3) using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) ("gun count"). Martinez–Salazar appeals his convictions on all counts, claiming insufficiency of the evidence, improper jury instruction, and constitutional error in the jury selection process.

### I. Sufficiency of the Evidence

Martinez–Salazar appeals the denial of his motion for acquittal as to his gun count conviction on the basis of insufficiency of the evidence.

■ It is clear under *Bailey v. United States*, 516 U.S. 137, 143–44, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), that Martinez–Salazar did not "use" a firearm, in the sense of "actively employing" it, so the only issue here is whether there was sufficient evidence to support his conviction under the "carry"

prong of § 924(c)(1). We held in *United States v. Staples*, 85 F.3d 461, 464 (9th Cir.), cert. denied, —— U.S. ——, 117 S.Ct. 318, 136 L.Ed.2d 233 (1996), that a defendant "carries" a firearm in an automobile as long as it is " 'about' his person, within reach, and immediately available for use." Here, Agent Rodriguez testified that Martinez–Salazar said that the gun was always in the car; the gun was located under the front passenger seat next to where the heroin had been; and Martinez–Salazar admitted that he sat in that seat on the way to the park meeting. The dispute at trial as to the gun count was not whether the gun was out of Martinez–Salazar's reach or otherwise unavailable to him, but whether he knew that it was in the car. There was ample evidence to permit the jury to conclude that he did.

### II. Jury Selection

■ Following the Supreme Court's seminal decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), courts have wrestled with the constitutional implications of jury selection in criminal cases. In *United States v. Annigoni*, 96 F.3d 1132 (9th Cir.1996) (en banc), for example, we surveyed the history of and rationale underlying peremptory challenges and held that the erroneous denial of a peremptory challenge was fundamental error requiring automatic reversal. Here we hold that the erroneous refusal to excuse a juror for cause violates a defendant's Fifth Amendment due process rights when it forces the use of a peremptory challenge to exclude that juror and, consistent with *Annigoni*, that such a denial requires automatic reversal.

Martinez–Salazar and his codefendant were allotted ten peremptory challenges to be exercised jointly in the selection of twelve jurors. *See* Fed.R.Crim.P. 24(b). They received one additional peremptory challenge to be used in the selection of the alternate juror. *See* Fed.R.Crim.P. 24(c).

Prior to trial, the district court gave prospective jurors a written questionnaire to

\* Following the death of Circuit Judge Thomas Tang, Judge Hawkins was drawn as his replacement on the panel.

complete. In response to a question essentially asking if the prospective juror knew of anything that might affect his ability to serve impartially, prospective juror Don Gilbert ("juror Gilbert") wrote the following:

"I would favor the prosecution."

When the jury venire was assembled, the district court engaged in the following colloquy with Mr. Gilbert:

THE COURT: On your questionnaire, you said in question number eight, the answer: "I would favor the prosecution." Is that— are you saying that you would not be able to listen to the evidence, and decide what happened, and follow the instructions of the Court, but would simply vote for a conviction because people are charged with drug crimes?

JUROR GILBERT: No. I think what I'm saying is all things being equal, I would probably tend to favor the prosecution.

THE COURT: You understand that one of the things the jury will be told, of course, is that the prosecution, the Government has the burden of proving someone guilty beyond a reasonable doubt. And I suppose realistically, all things being equal wouldn't be beyond a reasonable doubt. Would you disagree with that?

JUROR GILBERT: No, I guess I wouldn't disagree with that.

THE COURT: I guess the important question is—and perhaps let me ask it this way. It's kind of my question. But if you were the defendants here charged with this crime, and all of the jurors on your case had your background and your opinions, do you think you'd get a fair trial?

JUROR GILBERT: I think that's a difficult question. I don't think I know the answer to that.

Martinez–Salazar's trial counsel, Mr. Garcia, then followed up by questioning juror Gilbert:

MR. GARCIA: If you were to error [sic], where would you feel more comfortable erring, in favor of the prosecutor or the defendant?

JUROR GILBERT: Well, again, not having heard any evidence in the case, I think that's kind of hard to say. I think, as I

indicated on here, I would probably be more favorable to the prosecution. I suppose most people are. I mean they're predisposed. You assume that people are on trial because they did something wrong.

THE COURT: Well, you see, you heard me out there when I started the trial. That's not the general proposition. If it is, it's wrong. It's contrary to our whole system of justice. When people are accused of a crime, there's no presumption—

JUROR GILBERT: There's a—

THE COURT:—of guilty. The presumption is the other way. That's the way our system—

JUROR GILBERT: I understand that in theory.

THE COURT: Okay, all right, all right. Why don't you wait, and we'll be done here in a few minutes, okay? Thank you very much.

The record reflects no further conversations between juror Gilbert and the district court or counsel.

At the completion of the above inquiry, Martinez–Salazar's counsel challenged juror Gilbert for cause. Counsel for the government opposed the challenge, arguing, "Your honor, although he did have some opinions, he did indicate to you that he would follow your instructions and apply them accordingly." The district court then refused the requested challenge for cause, stating: "You know about him and know his opinions. He said he did say that he could follow the instructions, and he said he—'I don't think I know what I would do,' et cetera. So I think you have reasons to challenge him if you— strike him if you choose to do that...." Defendants were thus forced to use one of their peremptory challenges to strike juror Gilbert and eventually exhausted their allotted eleven.

### A. *History of the Appeal on this Issue*

This appeal itself has something of a history. When this case first came to this Court, Martinez–Salazar's then counsel took an *Anders v. State of California*, 386 U.S. 738, 87

S.Ct. 1396, 18 L.Ed.2d 493 (1967),[1] position with respect to whether the district court's refusal to dismiss juror Gilbert created a Sixth Amendment violation. Presumably, counsel took this position because of *Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), which held that the erroneous denial of a challenge for cause that requires counsel to use a peremptory challenge does not create a Sixth Amendment violation. *See also United States v. Baker*, 10 F.3d 1374, 1404 (9th Cir.1993). Because *Ross*, by its language, did not decide whether such an erroneous denial constitutes a Fifth Amendment violation, we ordered supplemental briefing.[2] We also relieved Martinez–Salazar's then-counsel and appointed new counsel.

### B. Analysis

#### 1. The District Court's Refusal to Exclude a Properly Cause–Challenged Juror

■ Martinez–Salazar claims that the district court should have excused juror Gilbert for cause because of his admitted bias in favor of the prosecution. We agree.

■ A juror is deemed impartial "only if he can lay aside his opinion and render a verdict based on the evidence presented in court...." *Patton v. Yount*, 467 U.S. 1025, 1037 n. 12, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). Because the " 'determination of impartiality, in which demeanor plays such an important part, is particularly within the province of the trial judge,' " we do not disturb a district court's decision to deny a challenge for cause absent a showing of abuse of discretion or manifest error. *United States v. Egbuniwe*, 969 F.2d 757, 762 (9th Cir.1992) (quoting *Ristaino v. Ross*, 424 U.S. 589, 595, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976)).

"When a juror has stated that she can decide a case impartially," a district court does not abuse its discretion in not excusing him for cause. *United States v. Poschwatta*, 829 F.2d 1477, 1484 (9th Cir.1987), *overruling on other grounds recognized by United States v. Powell*, 936 F.2d 1056, 1064 n. 3 (9th Cir.1991). We have upheld a district court's decision not to dismiss for cause a juror who initially admits bias as long as he or she ultimately asserts an ability to be fair and impartial. *See, e.g., United States v. Alexander*, 48 F.3d 1477, 1484 (9th Cir.1995) (juror initially said he "believed" he could be impartial but ultimately stated definitively that he could act fairly); *Poschwatta*, 829 F.2d at 1484 (juror claimed impartiality despite strong feelings about excuses for failing to file tax returns); *United States v. Daly*, 716 F.2d 1499, 1507 (9th Cir.1983) (juror initially said he would "try" to be impartial but ultimately stated, "Okay, I will do it").

The district court here should have excused juror Gilbert for cause because he did not and would not affirmatively state that he could lay aside his admitted bias in favor of the prosecution. Juror Gilbert clearly acknowledged this bias, even after being instructed by the district court that it was "contrary to our whole system of justice." He never retreated from his statement of bias; he only cryptically stated that he understood the presumption of innocence "in theory." The government's contrary assertions about juror Gilbert's statements are unsupported by the record.

**1.** Under *Anders*, an appointed defense counsel for an indigent on direct appeal may inform the court that all of the defendant's grounds for appeal are frivolous and may move to withdraw as counsel. Defense counsel must first file a so-called *Anders* brief "on behalf of the indigent defendant presenting the strongest arguments in favor of [his or her] client supported by citations to the record and to applicable legal authority." *United States v. Griffy*, 895 F.2d 561, 563 (9th Cir.), *appeal decided by* 904 F.2d 41 (9th Cir. 1990).

After receiving an *Anders* brief, "the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous." *Anders*, 386 U.S. at 744, 87 S.Ct. 1396. If the court concludes that the appeal is frivolous, it may grant counsel's motion to withdraw and dismiss the appeal. "On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent assistance of counsel to argue the appeal." *Id.*

**2.** Martinez–Salazar's initial brief contains a claim that the district court's refusal to strike juror Gilbert for cause "force[d] [him] to use one of his preemptory [sic] strikes to remove Gilbert from the panel," but does not explicitly allege a Fifth Amendment violation.

## 2. *Sixth Amendment*

■ Initially, Martinez–Salazar claimed that the district court's refusal to excuse juror Gilbert constituted a Sixth Amendment violation. *Ross* forecloses this argument, however, holding that "[s]o long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." 487 U.S. at 88. Under *Ross,* because Martinez–Salazar's counsel eventually struck juror Gilbert with a peremptory challenge, he suffered no prejudice to his Sixth Amendment right to trial by an impartial jury. *See also Siripongs v. Calderon,* 35 F.3d 1308, 1322 (9th Cir.1994); *Baker,* 10 F.3d at 1404.

## 3. *Fifth Amendment*

Martinez–Salazar's appellate counsel alleges that the district court's erroneous refusal to strike juror Gilbert for cause violated his Fifth Amendment right to due process by denying or impairing his right to the full complement of peremptory challenges to which federal law entitled him.[3] The relevant case law compels a decision in his favor.

### a. *The Violation*

Over thirty years ago, the Supreme Court held that a denial or impairment of the right to exercise peremptory challenges "is reversible error without a showing of prejudice." *Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), *overruled in part by Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). When considering whether the loss of a peremptory challenge violates due process, *Ross* limits what constitutes a denial or impairment of the right of peremptory challenge.[4] *Ross* explained:

Because peremptory challenges are a creature of statute and are not required by the Constitution, it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise. As such, the "right" to peremptory challenges is "denied or impaired" only if the defendant does not receive that which state law provides.

487 U.S. at 89, 108 S.Ct. 2273 (citations omitted). The Oklahoma law at issue in *Ross* entitled the defendant to nine peremptory challenges. Under that law, one of the required uses of a peremptory challenge was to "cure erroneous refusals by the trial court to excuse jurors for cause." *Id.* at 90, 108 S.Ct. 2273. Accordingly, the defendant in *Ross* did not lose any right conferred by state law when he expended one of the nine challenges to remove a juror that should have been excused for cause. *See id.* at 90–91, 108 S.Ct. 2273.

*Ross,* however, left open the possibility that a Fifth Amendment due process challenge could succeed if the applicable law granting a defendant the right to exercise peremptory challenges did not require their use to cure erroneous refusals to remove jurors for cause. Specifically, the Court stated: "We need not decide the broader question whether, in the absence of Oklahoma's limitation on the 'right' to exercise peremptory challenges, 'a denial or impairment' of the exercise of peremptory challenges occurs if the defendant uses one or more challenges to remove jurors who should have been excused for cause." *Id.* at 91 n. 4, 108 S.Ct. 2273.

We have twice revisited *Ross* but not answered this specific question. In *Baker,* we interpreted *Ross* to mean that "the due process 'right' to peremptory challenges is 'denied or impaired' only if the defendant does

---

**3.** In its supplemental brief and at oral argument, the government conceded that due process would be violated if Martinez–Salazar had to use a peremptory challenge to strike a juror who should have been stricken for cause. The government's position was that the district court had not erred in refusing to strike juror Gilbert for cause. We disagree, however, and independently conclude that the district court's decision violated Martinez–Salazar's Fifth Amendment right to due process.

**4.** Because *Ross* involved an appeal of a state-court decision, the Court framed the issue as arising under the Due Process Clause of the Fourteenth Amendment. Martinez–Salazar's claim arises in federal court and hence is rooted in the Due Process Clause of the Fifth Amendment.

not receive the full complement of challenges to which he is entitled by law." 10 F.3d at 1404. Because the defendants-appellants in *Baker* based their Fifth Amendment due process challenge on the district court's refusal to ask prospective jurors proposed supplemental questions, however, that case did not address the question of whether a federal defendant is denied the "full complement" when he is forced to use one of his peremptory challenges to cure an erroneous for-cause refusal. Moreover, we held that no due process violation occurred because the defendants were granted more challenges than they were entitled to under federal law. In addition, the opinion does not indicate whether the defendants used all allotted challenges. *See id.*

In *Siripongs*, we examined a defendant's claim that the trial court applied the wrong standard on voir dire to determine which venire members should be stricken for cause based on their views of the death penalty. We concluded that the defendant "failed to demonstrate that any of the jurors actually empaneled were unduly prone to impose the penalty of death." 35 F.3d at 1322. We further stated:

> It is immaterial that [defendant] may have been required to use preemptory [sic] challenges to excuse jurors that the trial court would have excused for cause had it employed the proper standard. [Defendant] did not exhaust all of his preemptory [sic] challenges. Moreover, the loss of preemptory [sic] challenges is not a due process violation.

35 F.3d at 1322 (citing *Ross*, 487 U.S. at 88, 108 S.Ct. 2273).

We decline to apply literally and in all circumstances the statement that "the loss of [peremptory] challenges is not a due process violation." When, as in *Siripongs* and *Ross*, a state statute is involved, the answer may turn on the specific provisions of the statute. Like *Baker*, *Siripongs* did not reach the

question whether due process is violated when a defendant is forced to exercise a peremptory challenge to cure an erroneous for-cause refusal. We think the above statement is best understood in the specific factual context of the case. The defendant in *Siripongs* could suffer no due process violation because he did not exhaust all of his peremptory challenges and hence this right was not "denied or impaired" in any way. Moreover, *Siripongs* alleged error under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), both Sixth Amendment cases. *Siripongs*, therefore, also does not answer the question left open by *Ross*.

More importantly, *Siripongs* cannot stand for the proposition that the loss of a peremptory challenge *never* violates due process because *Ross* and *Baker* make clear that some such losses do indeed violate due process. For example, due process would be violated if a trial court permitted a defendant to exercise fewer than the number of peremptory challenges authorized by law. Hence *Siripongs* holds only that the loss of a peremptory challenge *does not necessarily* violate due process.[5]

■ Martinez–Salazar's case presents precisely the question *Ross* left open. Martinez–Salazar was entitled to and received eleven peremptory challenges, and federal law does not require a defendant to exercise a peremptory in order to cure an erroneous refusal to strike a juror for cause.[6] Furthermore, Martinez–Salazar and his codefendant exhausted his eleven peremptories. and had to use one of them to strike juror Gilbert.

■ Under these circumstances, we hold that Martinez–Salazar's Fifth Amendment due process rights were violated. Martinez–Salazar was entitled to use his peremptory challenges solely to strike those jurors who would not otherwise be excused for cause.

---

5. *Siripongs* and *Baker* are also panel decisions that pre-date the en banc decision in *Annigoni*. Although we attempt to harmonize them here, to the extent that either or both conflict with *Annigoni*, *Annigoni* must control. *See Campbell v. Wood*, 18 F.3d 662, 672 n. 2 (9th Cir.1994) (en banc).

6. A federal defendant can contest a decision to deny a for-cause challenge without first peremptorily striking the juror in question. *See United States v. Mobley*, 656 F.2d 988, 989–90 (5th Cir. Unit B Sept.1981).

The district court erroneously denied his for-cause challenge to juror Gilbert, thereby forcing him to exercise one of his peremptories to achieve the same result.[7]

### b. *The Remedy*

In *Annigoni*, we held that the erroneous denial of a defendant's right of peremptory challenge requires automatic reversal. *See* 96 F.3d at 1146–47. In that case, a trial court denied the defendant's peremptory challenge to a juror because it believed the challenge was racially motivated. We ultimately held: (1) the denial was erroneous because the defense offered a plausible explanation for the proposed peremptory challenge; and (2) the erroneous denial of a peremptory challenge is not subject to harmless-error analysis but requires reversal. *See id.*

While there is a difference between these facts and those in *Annigoni*—namely, the "offensive" juror did not serve on Martinez–Salazar's jury—the rationale applies equally here. Both involve the erroneous limitation of an essential right of a criminal defendant—the right to exercise non-discriminatory peremptory challenges without judicial interference. Prospective Juror Gilbert, remarkable if for nothing else but his candor, had no business sitting on this or any other criminal jury. Peremptory challenges are reserved for government and defense counsel alike to use as they see fit, as long as *Batson* and its progeny are observed. Therefore, following *Annigoni*, we hold that the district court's effective denial of Martinez–Salazar's right to his full complement of peremptory challenges requires reversal of his conviction.

REVERSED AND REMANDED.

RYMER, Circuit Judge, concurring in part and dissenting in part:

In creating a Fifth Amendment due process right that is abridged whenever a defen-dant uses a peremptory challenge to strike a juror who should have been excused for cause, the majority constitutionalizes a statutory problem, approaches the problem as if error had been preserved (which it wasn't), and accomplishes through the back door what *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), forecloses through the front. I therefore dissent.

In *Ross*, the Supreme Court held that "[s]o long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." *Id.* at 88, 108 S.Ct. 2273. Apart from the Sixth Amendment's guarantee of an impartial jury, there is no constitutional right to a peremptory challenge. *Id.* Because peremptory challenges are a creature of statute, the majority should not have gone beyond the Sixth Amendment in search of a constitutional basis for reversal.

Instead, this should be treated as an ordinary statutory question that could and should be resolved by ordinary statutory analysis. We have this case on direct review of a federal criminal proceeding. We should, therefore, start with Rule 24(b) of the Federal Rules of Criminal Procedure, which is the source of the statutory entitlement to peremptories, and end with Rule 52, for "it is that Rule which by its terms governs direct appeals from judgments of conviction in the federal system, and therefore governs this case." *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 1548, 137 L.Ed.2d 718 (1997).

Rule 24(b) gives defendants jointly ten peremptory challenges (unless the court allows more, which it may do if asked). Martinez in fact got to exercise all of his peremptory challenges; he never objected that the district court denied him "the full complement of peremptory challenges to which he [was] entitled." *United States v. Baker*, 10

---

7. We find no merit in the government's argument that Martinez–Salazar cannot claim *his* due process rights were violated because it is unclear which defendant actually exercised the peremptory to strike juror Gilbert. Rule 24(b) entitles defendants *jointly* to ten peremptory challenges. The government's position taken to its logical extreme would lead to inequitable results. For example, if three defendants were tried together and all three agreed to strike juror A, but defendant # 1 actually exercised the peremptory challenge, only he could secure a reversal of his conviction if an error requiring automatic reversal occurred during the jury selection process.

F.3d 1374, 1404 (9th Cir.1993). Nor did he ask for an extra peremptory to compensate for the one that he decided to use on Gilbert, or object to using a peremptory for this purpose. Nothing suggests that he would have used *that* peremptory on anyone else. In short, we are left with no idea whether Martinez "wasted" a peremptory, let alone wanted to strike another venireman who was not to his liking (for a legitimate reason) but couldn't do so because he was out of challenges. What we do know is that Martinez let the jurors be sworn without questioning either their impartiality or the process by which they were impaneled.

Having failed to tell the district court that its procedures were contrary to Rule 24(b), or that his due process rights were adversely affected, Martinez forfeited any claim that he was deprived of the ten challenges he was jointly allowed under Rule 24(b). It is well settled that failure to raise an issue in the district court waives the argument. Counsel are quite used to making a record during jury selection, and courts have ample discretion to respond.

Our review is therefore constrained by Rule 52(b), which we must apply as outlined in *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).[1] *See Johnson*, 117 S.Ct. at 1548. *Olano* requires that "before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights." *Id.* at 1548–49 (citing *Olano*, 507 U.S. at 732, 113 S.Ct. 1770) (internal quotation marks omitted; alteration in *Johnson*).

Assuming that the district court erred in denying Martinez's challenge of Gilbert for cause,[2] it could not have been "plain" error to let Martinez use a peremptory to excuse the juror whom he had challenged for cause. This is so for at least three reasons. First, under *Ross*, using a peremptory to cure the trial court's improper failure to grant a challenge for cause does not violate a constitutional right without a showing of prejudice.

Here, there is no dispute that the jury which was impaneled was impartial. Second, as the majority recognizes, we have never answered the specific question that it resolves today—whether there is a Fifth Amendment due process violation if the applicable law does not require use of a peremptory challenge to cure an erroneous refusal to remove for cause. So far as I know, no one else has, either. Thus, the law definitely was not clear at the time of trial, or now. Finally, nothing in *Ross* or Rule 24(b) itself suggests that the exercise of peremptories is "denied" if the defendant uses a challenge to strike a juror who should been excused for cause. Indeed, we distinguished *Ross* on precisely this footing in *United States v. Annigoni*, 96 F.3d 1132 (9th Cir.1996) (en banc), indicating that "the [trial] court's erroneous denial of Ross's challenge for cause prompted Ross to expend one of his peremptory challenges to remove the questionable juror [but] it *never deprived him* of the right of peremptory challenge." *Id.* at 1146 (emphasis in original). As the statutory violation was waived, we don't have to decide whether Martinez's statutory right to ten jointly exercised challenges was "impaired," nor do we have to decide whether automatic reversal remains the remedy for statutory error. *See Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), *overruled on other grounds by Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *cf. Annigoni*, 96 F.3d at 1147 (rejecting harmless-error analysis for the erroneous denial of a peremptory challenge). Since no plain error appears, that's the end of this case so far as I am concerned.

Martinez's failure to preserve and pursue the available avenue of relief for violation of his statutory rights gives this court no license to make the Due Process Clause a default analysis. The Supreme Court has said over and over that "peremptory challenges are not of constitutional dimension." *Ross*, 487 U.S. at 88, 108 S.Ct. 2273 (citing *Gray v. Mississippi*, 481 U.S. 648, 663, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987); *see Swain*, 380 U.S. at 219, 85 S.Ct. 824; *Stilson*

---

**1.** The majority approaches the appeal as if Martinez preserved a Rule 24 error for review. He didn't, and the majority's analysis goes astray for this reason as well.

**2.** I assume error in this respect because the majority finds there was error.

*v. United States,* 250 U.S. 583, 586, 40 S.Ct. 28, 63 L.Ed. 1154 (1919); *see also* (after *Ross* ) *Georgia v. McCollum,* 505 U.S. 42, 57, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); *Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 620, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). Rather, "[t]hey are a means to achieve the end of an impartial jury." *Ross,* 487 U.S. at 88, 108 S.Ct. 2273. That end was indisputably achieved in this case. To find a due process violation for "effectively" denying or impairing Martinez's "right to the full complement of peremptory challenges to which he was entitled under federal law," as the majority does, maj. op. at 659, comes full circle by "effectively" making the exercise of a peremptory challenge a *constitutional* right—and a right, at that, whose dilution requires automatic reversal.

*Constitutionalizing* the impairment of peremptory challenges is not inconsequential. Trial courts, state and federal, rule on cause challenges by the minute. A statutory violation (state or federal) may well require reversal if the defendant has exhausted his peremptories by striking a juror he unsuccessfully challenged for cause; but there is no reason why the door should be open to review of state or federal *statutory* violations for *constitutional* error that can never be treated as harmless.

I would not have reached the issue the majority decides. I would not convert a violation of Rule 24(b) (assuming there was one) into a constitutional violation, and I would not engraft a common law remedy of per se reversal for a Rule violation (assuming it survives *Ross* ) onto the Due Process Clause of the Fifth Amendment. I therefore dissent from Part II.